**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maureen Cathy OLCOTT,**
**Defendant-Appellant.**

**No. 77–5539**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 3, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Michael J. Doddo, Miami, Fla. (court appointed), for defendant-appellant.

Kevin M. Moore, Asst. U. S. Atty., J. V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

Maureen Cathy Olcott appeals her conviction upon a bench trial of importation and possession with intent to distribute 147.3 grams of cocaine, in violation of 21 U.S.C.A. §§ 952(a), 960(a)(1), and 841(a)(1). The sole issue presented on this appeal is whether the trial court erred in denying Olcott's motion to suppress the cocaine. The district court held that the strip search of defendant was supported by reasonable suspicion. We affirm.

Defendant Olcott arrived at Miami International Airport on Braniff Airlines Flight No. 908 from Bogota, Colombia, on January 28, 1977. She presented herself and her luggage for inspection by Customs Inspector Charlotte Edmonds. Defendant told Edmonds that her one-week trip had been primarily for business and that she planned to import goods made in Colombia. She stated she did not have a name for her new business, but displayed a recently acquired Dade County, Florida license which she said "amounted to a peddler's license." She also said that she had made a similar trip the month before. Defendant mentioned that she had obtained the money for the trip from her parents' real estate business, where she earned $1,000 per month by typing closings in real estate deals and in commissions.

Customs Inspector Edmonds testified that she had been so employed for seven years, during which time she had made ten to twelve narcotic seizures. Ms. Edmonds testified that she knew that most seizures of cocaine come from Colombia. She also stated that defendant Olcott had been wearing heavy clothing that made her appear bulky around the midsection. When defendant went to close her suitcase, Ms. Edmonds observed that she did not bend over, but rather stooped or squatted.

Inspector Edmonds testified that she "didn't buy" Olcott's story concerning the alleged business purpose of her trips to Bogota. Defendant had some swatches of leather in her luggage, but she had "no samples or anything else." Ms. Edmonds testified that defendant "had practically nothing to show me that she had accomplished on this trip." When Ms. Edmonds put on a light to call a senior inspector, defendant "became a little bit apprehensive and worried."

Olcott testified that she was dressed as she was because of the cold weather. She said that she had 20 to 30 leather swatches, with prices marked on them, and business cards from leather goods dealers that she had gone to see.

Inspector Edmonds testified that on the basis of her training and experience involving narcotics traffic, and defendant's appearance, movements and responses, she concluded that a strip search was warranted. After obtaining permission from a supervisor, Ms. Edmonds and another female inspector had defendant strip. They found the cocaine in two plastic bags which had been sewed into the cups of defendant's brassiere.

The rule in this Circuit is that customs officials must have a "reasonable suspicion" in order to conduct a strip search at the border. *United States v. Himmelwright*, 551 F.2d 991, 995 (5th Cir. 1977). Defendant contends that the district court erred in holding this search was based on reasonable suspicion. We find no merit in this. While every case must be decided on its own particularized facts, the grounds for suspicion in this case are sufficiently similar to those in *United States v. Smith*, 557 F.2d 1206 (5th Cir. 1977), and in *United States v. Himmelwright*, 551 F.2d 991 (5th Cir. 1977), to validate the search. In both those cases we upheld strip searches of passengers arriving at Miami International Airport from Colombia, under circumstances similar to those of the present case.

Defendant contends the search was unreasonable to the extent that it went beyond her waist area. Although Inspector Edmonds described defendant's waist area as bulky, this observation was but one fact among several which resulted in the decision to conduct a full search. Accordingly, it cannot be used to limit the scope of the search.

We find no error in the district court's denial of defendant's motion to suppress.

AFFIRMED.